**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE
```

|  |  |
|---|---|
| PABLO FAVELA CORRAL,      : | **Hon. Jerome B. Simandle** |
| Petitioner,    : | Civil No. 07-2779 (JBS) |
| v.             : |  |
| CHARLES SAMUELS, et al.,  : | **OPINION** |
| Respondents.   : |  |

**APPEARANCES:**

    PABLO FAVELA CORRAL, #17682-047
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey  08640
    Petitioner Pro Se

    IRENE E. DOWDY, Assistant U.S. Attorney
    CHRISTOPHER J. CHRISTIE, U.S. ATTORNEY
    401 Market Street, Fourth Floor
    Camden, New Jersey 08101
    Attorneys for Respondents

**SIMANDLE,** District Judge

    Pablo Favela Corral filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking restoration of 27 days of good conduct time forfeited as a disciplinary sanction for threatening another with bodily harm or any other offense (code 203).  Respondents filed an Answer, together with the declaration of Tara Moran and relevant documents.  Petitioner filed a Reply. For the reasons expressed below, the Court will dismiss the Petition with prejudice.

### I.   BACKGROUND

Petitioner challenges the loss of 27 days of earned good conduct time imposed by the Bureau of Prisons ("BOP") as a disciplinary sanction for threatening another with bodily harm or any other offense (code 203).[1]  Petitioner argues that the BOP abused its discretion and violated Due Process by failing to obtain a translation from an independent interpreter of Petitioner's statement (in Spanish) to the reporting officer, and that, when accurately translated, Petitioner's words did not constitute prohibited acts.

Respondents filed an Answer, arguing that the BOP did not abuse its discretion or violate federal law.  In addition, Respondents filed the declaration of Tara Moran and the following documents: Disciplinary Hearing Officer's Report ("DHO Report") dated October 18, 2006; Incident Report dated August 18, 2006; memorandum from A. Haynes dated August 18, 2006; Administrative Remedy Appeal dated October 30, 2006; Decision of the Regional

---

[1] To the extent that Petitioner challenges the sanctions placing him in disciplinary segregation for 30 days, 30 days loss of visitation, phone and commissary privileges, and the loss of his UNICOR job, these claims are not cognizable under 28 U.S.C. § 2241 because they do not affect the fact or duration of Petitioner's confinement.  See Ganim v. Fed. Bureau of Prisons, 235 Fed. Appx. 882 (3d Cir. 2007); Bronson v. Demming, 56 Fed. Appx. 551 (3d Cir. 2002); Woodall v. Fed. Bureau of Prisons, 432 F. 3d 235, 242 n.5 (3d Cir. 2005).  Alternatively, while the Due Process Clause protects against the revocation of good conduct time, it does not protect against the imposition of the other sanctions.  See Sandin v. Conner, 515 U.S. 472 (1995); Torres v. Fauver, 292 F. 3d 141, 150-51 (3d Cir. 2002).

Director of the BOP dated December 6, 2006; Central Office Administrative Remedy Appeal dated December 18, 2006; and Decision of Harrell Watts, Administrator of National Inmate Appeals, dated March 8, 2007.

Except for the translation, the facts are undisputed. On August 18, 2006, A. Haynes, Fabric Worker Supervisor at FCI Fort Dix, wrote Incident Report #1503114, charging Petitioner with three disciplinary code violations, i.e., Threatening another with bodily harm or any offense (code 203), Insolence toward a staff member (code 312) and Use of abusive or obscene language (code 404). The Incident Report describes the incident as follows:

> On 8-18-2006 at approximately 7:36 am Inmate Favela Corral 17682-047 threatened, was insolen[t] towards staff and used abusive or obscene language. Inmate Favela was walking through the Unicor work gate. Inmate was asked to submit to a random pat search. At this time inmate made the following [statement]: "PORQUE TO ME JODES A MI, TE VOY A ESCRIBER CABRON. ESTOY CANSADO DE ESTA PENDEJADA, TU VERAS MAS TARDE LO QUE TE VA PASAR."
>
> Translation into English: why are you F-ing with me. I am going to write your ass up Mother F-er. You will see what is going to happen to you later punk. I quickly pat searched the inmate and escorted him to the lieutenant's office.

(Incident Report #1503114, dated Aug. 18, 2006.)

The DHO Committee referred the charges to the DHO for a hearing. The DHO conducted the hearing on September 15, 2006.

Petitioner appeared with a staff representative, Mr. Fentress. The DHO issued a report on October 18, 2006.  (DHO Report dated Oct. 18, 2006.)  Relying on the Incident Report and Petitioner's statement in response to the Incident Report, the DHO found Petitioner guilty of the three charged infractions and imposed the following sanctions:  27 days loss of good conduct time, 30 days in disciplinary segregation and 30 days loss of visitation privileges for the Code 203 charge of threatening; a concurrent 15 days in segregation, 30 days loss of phone privileges and loss of job in UNICOR for the Code 312 charge of insolence; and 30 days loss of commissary privileges for Code 404 use of abusive language charge.  The DHO Report explains the findings:

> I took into consideration the statements you made.  Specifically, "I said was why he kept questioning him.  He got loud because he got loud with me.  That's the way they talked to me," as partially supporting the incident report as written.  Based on the greater weight of evidence provided before me, your actions are consistent with Code 203; threatening another, 312; insolence towards staff, 404; using abusive/obscene language.

(DHO Report, Part V, dated Oct. 18, 2006.)

Petitioner appealed to the Regional Director, arguing in relevant part as follows:

> The statement in Spanish which I supposedly made to the staff member has been completely intentionally mis-translated, by the staff member involved in the incident.  The DHO should have had someone not involved in the incident provide a translation from Spanish, rather than relying on translation by the

4

> staff member which appears in the incident report.  The correct translation from Spanish is:  "Why do you harass me?  I'm going to write you up cuckold; I'm tired of this foolishness you'll see later what happens."  With regard to the 203 charge, as is obvious in the correct translation no threat was made to the staff member.  I simply advised him that I would resort to the Administrative Remedies Procedure . . . .
>
> A correct translation which should have been done by an independent staff member would have shown that no threat was made by me, that I was not insolent and I certainly never used obscene language towards the staff member.  I attach copies from a Spanish-English dictionary of the key words involved, "pendejada" which is derived from "Pendejo."  The Spanish word "cabron" in its simplest form is translated as a male goat, but in the context used refers to someone who has been cuckold.  The Spanish word "jodes" is a colloquial expression which means to bother or harass.  Two other words in the English translation appear nowhere in the original Spanish . . . .

(Appeal to Regional Director dated Oct. 30, 2006.)

The Regional Director denied the appeal as follows, in relevant part:

> The DHO found you committed the prohibited acts based upon the following.  On August 18, 2006, the reporting officer requested you submit to a random pat search.  You responded by speaking to the officer loudly and in Spanish.  The officer interpreted your comments to mean the following, "Why are you F-king with me.  I am going to write your ass up Motherf-ker.  You will see what is going to happen to you later punk."  You deny making this statement and offer a different interpretation.  During your DHO hearing, you admitted to speaking loudly with the officer.  The reporting officer perceived both your

>       words and actions as constituting a threat,
>       it is the officer's perception that forms the
>       basis for the charges not the actual words
>       themselves.  The DHO based his decision on
>       the greater weight of the evidence and found
>       the staff's statements more credible,
>       reasonably concluding that you committed the
>       prohibited acts.

(Decision of Regional Director, dated Dec. 6, 2006.)

Petitioner appealed to the Central Office.  He argued essentially that "the reporting officer's English translation is not just inaccurate, but adds numerous profane words that don't appear in the Spanish version.  The Spanish version shows that not a single obscene word was uttered and no threat of bodily harm was ever uttered to the officer."  (Central Office Administrative Remedy Appeal, dated Dec. 18, 2006.)

On March 8, 2007, Harrell Watts, Administrator, National Inmate Appeals, denied Petitioner's appeal, in relevant part, as follows:

>       You admitted to speaking loudly with officer.
>       The reporting officer perceived both your
>       words and actions as constituting a threat.
>       Therefore, based on our review, we find that
>       the required disciplinary procedures were
>       substantially followed, the greater weight of
>       the evidence supports the decision, and the
>       sanction imposed was appropriate for the
>       offense and in compliance with policy.

(Response of Harrell Watts dated March 8, 2007.)

Petitioner signed the Petition before this Court on June 12, 2007.  The Clerk received it on June 14, 2007.  Petitioner challenges the disciplinary sanctions on the grounds that the

6

English translation of Petitioner's words by the reporting officer was inaccurate and included obscene and threatening words Petitioner did not say in Spanish.  In addition, Petitioner contends that the BOP abused its discretion and violated Petitioner's rights by relying on the reporting officer's incorrect translation.  According to Petitioner, the disciplinary charges are unfounded because, when his words are accurately translated, he did not commit the prohibited acts.

Respondents argue that Petitioner is not entitled to habeas relief because the DHO's findings were based on some evidence and the BOP's decision complied with due process.  Petitioner filed a Reply seeking summary judgment, and arguing: (1) in the absence of an independent and accurate translation of Petitioner's words, there are no facts in the record to support the finding that Petitioner committed the prohibited acts; and (2) the DHO abused his discretion.

## II. DISCUSSION

### A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody" and (2) the

custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed."  Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the loss of good conduct time on federal grounds, and he was incarcerated in New Jersey at the time he filed the Petition. See Woodall v. Fed. Bureau of Prisons, 432 F.3d at 242-44.

B.  Abuse of Discretion Standard

Petitioner argues that the sanctions must be set aside because the BOP abused its discretion.  The Administrative Procedure Act ("APA"), see 5 U.S.C. § 706(2)(a); Lopez v. Davis, 531 U.S. 230, 240 (2001); Edwards v. United States, 41 F.3d 154, 156 (3d Cir. 1994), requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  A reviewing court must find that the actual choice made by the agency was neither arbitrary nor capricious.  See C.K. v. N.J. Dep't of Health & Human Services, 92 F.3d 171, 182 (3d Cir.

8

1996); see also Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 414 (1971) ("agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' ...."), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977) (quoting 5 U.S.C. § 706(2)(A)).  "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins., 463 U.S. 29, 43 (1983) (citation and internal quotation marks omitted); accord Bowman Transp., Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 285 (1974).

To make this finding that agency action was not arbitrary or capricious, a court must review the administrative record that was before the agency at the time of the decision, and "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . .  Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.  The Court is not empowered to substitute its judgment for that of the agency." Overton Park, 401 U.S. at 416. Reversal of agency action is required "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if [the court] simply cannot

9

evaluate the challenged agency action on the basis of the record before [it]." C.K., 92 F.3d at 184 (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)).

BOP regulations authorize the BOP to impose sanctions when an inmate "is found to have committed a prohibited act." 28 C.F.R. § 541.13(a). Prohibited acts under BOP regulations include code 203, entitled "Threatening another with bodily harm or any other offense;" code 312, entitled "Insolence towards a staff member;" and code 404, entitled "Using abusive or obscene language." 28 C.F.R. § 541.13, Table 3.

C.  Due Process

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F. 2d 1396, 1399 (3d Cir. 1991); Levi v. Holt, 192 Fed. Appx. 158 (3d Cir. 2006). Where a prison disciplinary hearing results in the loss of good conduct time, due process requires: (1) 24 hours advance written notice of the disciplinary charges; (2) a hearing with the right to testify, call witnesses and present documentary evidence, when not unduly hazardous to correctional goals; and (3) a written statement by the factfinder as to the evidence relied on and

10

reasons for the disciplinary action.  See Wolff, 418 U.S. at 564-566.

In addition to the requirements of Wolff, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary [officer] are supported by some evidence in the record."  Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454 (1985) (citations and internal quotation marks omitted); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992); Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989).  The Supreme Court explained the "some evidence" standard in this passage of Hill:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [officer].

Hill, 472 U.S. at 455-456; see also Thompson, 889 F.2d 500.

Petitioner argues essentially that the BOP abused its discretion and violated the "some evidence" standard.  He maintains that the BOP abused its discretion by failing to obtain an independent translation and relying instead on the reporting officer's deliberate mistranslation.  He contends that, with an accurate translation, there is no evidence to support the

11

findings that Petitioner threatened the reporting officer, was insolent toward him, or used abusive or obscene language.

According to Petitioner, the correct English translation of his words is as follows: "Why do you harass me? I'm going to write you up cuckold; I'm tired of this foolishness you'll see later what happens." (Appeal to the Regional Director, dated Oct. 30, 2006.) Webster's Unabridged Dictionary defines "cuckold" as "a man whose wife has committed adultery." Webster's New Universal Unabridged Dictionary 441 (Deluxe Second Ed., Dorset & Baber 1983). Petitioner admits that he spoke loudly. The phrase "you'll see later what happens," spoken loudly, could be considered a threat. Given these undisputed circumstances, Petitioner's words, correctly translated and spoken loudly, satisfy the "some evidence" standard. See Estrada v. Williamson, 240 Fed. Appx. 493, 494 (3d Cir. 2007) ("Given Estrada's status as a prisoner, his size, his admittedly loud and boisterous tone of voice, and the fact that he continually stepped towards the female employee during the incident, Estrada should have realized that his actions could constitute a violation of Code 203"); Meyers v. Alldredge, 492 F. 2d 296, 311 (3d Cir. 1974)("Prisoners, unlike free men, must know that they are considered potentially dangerous men and must expect to be highly regimented. In such cases the law requires less in the way of notice, and places a greater burden on the individual to

12

make inquiry or ask permission before acting") (quoting Landman v. Royster, 333 F. Supp. 621, 655-56 (E.D. Va. 1971)). Accordingly, this Court finds that the BOP did not abuse its discretion in sanctioning Petitioner and that the disciplinary decision was supported by "some evidence."

### III. CONCLUSION

For the reasons set forth above, the Court dismisses the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 with prejudice.

                                        **s/ Jerome B. Simandle**
                                        **JEROME B. SIMANDLE, U.S.D.J.**

Dated:   **March 31**  , 2008